**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEVERE GROUP GMBH,<br><br>   *Plaintiff*,<br><br>   - *vs.* -<br><br>OPINION CORP. *d/b/a* PISSEDCONSUMER.COM, MICHAEL PODOLSKY, JOANNA SIMPSON *and* ALEX SYROV,<br><br>   *Defendants*. | CIVIL ACTION NO.<br>11 cv 3360 (FB) |

---

**MEMORANDUM OF LAW IN SUPORT OF**
**PLAINTIFF'S MOTION TO DISMISS THE COMPLAINT**
**FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF**
**CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Ronald D. Coleman (RC 3875)
Joel G. MacMull (JM 8239)
**GOETZ FITZPATRICK LLP**
One Penn Plaza—Suite 4401
New York, NY 10119
(212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com
*Attorneys for Defendants*
*Opinion Corp., Michael Podolsky &*
*Alex Syrov*

# TABLE OF CONTENTS

Table of Authorities ………………………………. ii

PRELIMINARY STATEMENT ………………………………. 1

STATEMENT OF FACTS ………………………………. 2

I. PLAINTIFF HAS FAILED TO STATE
A CLAIM FOR TRADEMARK INFRINGEMENT ………………………………. 4

1.     Motion to dismiss standard ………………………………. 4

2.     Plaintiff has failed to allege the existence of a ………………………………. 6
protectable trademark right

3.     Plaintiff has failed to plead facts that amount ………………………………. 8
to a plausible claim of a likelihood of confusion

4.     Plaintiff has failed adequately to plead a ………………………………. 16
claim for secondary trademark liability

II. PLAINTIFF CANNOT MEET THE HIGH
STANDARDS NECESSARY TO JUSTIFY THE
GRANTING OF AN INJUNCTION TO RESTRAIN
FREE SPEECH ON DEFENDANTS' WEBSITE ………………………………. 19

CONCLUSION ………………………………. 21

# TABLE OF AUTHORITIES

## CASES

*Bihari v. Gross,* 199 F.Supp.2d 309 (S.D.N.Y. 2000) …………………… 8, 11, 12

*Brookfield Communics., Inc. v. West Coast Entmt. Corp.,* 174 F.3d 1036 (9th Cir. 1999) …………………… 12

*Buti v. Perosa, S.R.L.*, 139 F.3d 98 (2d Cir. 1998) …………………… 5

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir.1995) …………………… 11

*Cintas Corp. v. Unite Here,* 601 F. Supp. 2d 571 (S.D.N.Y. 2009) *aff'd,* 355 F. App'x. 508 (2d Cir. 2009) …………………… 10, 11, 14

*Citigroup Inc. v. City Holding Co.,* 171 F.Supp.2d 333 (S.D.N.Y. 2001) …………………… 9

*Girls Scouts v. Personality Posters Mfg. Co.*, 304 F. Supp. 1228 (S.D.N.Y. 1969) …………………… 8, 12, 13

*Hard Rock Café*, 955 F.2d 1143 (7th Cir. 1992) …………………… 16, 17

*Hearts on Fire Co. v. Blue Nile*, 603 F. Supp. 2d 274 (D. Mass. 2009) …………………… 13

*Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844 (1982) …………………… 15

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135 (2d Cir. 2007) …………………… 6, 7

*Keebler Company v. Murray Bakery Products*, 866 F.2d 1386 (Fed.Cir.1989 …………………… 9, 10

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111 (2004) …………………… 11

*Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005) …………………… 11, 12, 13, 14

*Lockheed Martin Corp. v. Network Solutions, Inc*. 985 F.Supp.949 (C.D. Cal. 1997), *aff'd* , 194 F.3d 980 (9th Cir. 1999) …………………… 15, 17

*Malletier v. Dooney & Bourke, Inc.,* 340 F. Supp.2d 415 (S.D.N.Y. 2004) …………………… 19

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) …………………… 19

*Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,*

| | | |
|---|---|---|
| 182 F.3d 133 (2d Cir. 1999) | …………………… | 5 |
| *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) | …………………… | 20 |
| *New York Times Co. v. United States*, 403 U.S. 713 (1971) | …………………… | 20 |
| *Nissan Motor v. Nissan Computer*, 378 F.3d 1002 (9th Cir, 2004) | …………………… | 13 |
| *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) | …………………… | 20 |
| *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, 494 F.3d 788 (9th Cir. 2007) | …………………… | 18 |
| *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492 (2d Cir.1961) | …………………… | 10 |
| *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58 (2d Cir. 1992) | …………………… | 15 |
| *Rosetta Stone Ltd. v. Google, Inc.*, 730 F. Supp. 2d 531 (E.D. Va. 2010) | …………………… | 17 |
| *Savin Corp. v. The Savin Group*, 391 F.3d 439 (2d Cir. 2004) | …………………… | 14 |
| *SB Designs v. Reebok Int'l., Ltd.*, 338 F.Supp.2d 904 (N.D. Ill. 2004) | …………………… | 16, 17 |
| *Software For Moving, Inc. v. Frid*, 09 CIV 4341 DLC, 2010 WL 2143670 (S.D.N.Y. May 27, 2010) | …………………… | 4 |
| *Sony Computer Entertainment America, Inc. v. GameMasters*, 87 F.Supp.2d 976 (N.D. Cal. 1999) | …………………… | 15 |
| *Steinway, Inc. v. Ashley*, 01 CIV 9703 GEL, 2002 WL 122929 (S.D.N.Y. Jan. 29, 2002) | …………………… | 15 |
| *Stop the Olympic Prison v. United States Olympic Comm.*, 489 F. Supp. 1112 (S.D.N.Y.1980) | …………………… | 8, 20 |
| *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) | …………………… | 4, 5 |
| *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003) | …………………… | 9 |
| *Taylor Bldg. Corp. of Am. v. Benfield*, 507 F. Supp. 2d 832 (S.D. Ohio 2007) | …………………… | 9 |
| *Tiffany Inc. v. eBay Inc*., 600 F.3d 93 (2d Cir. 2010) | …………………… | 18 |
| *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86 (2d Cir. 1997) | …………………… | 11 |
| *Weiss Assoc., Inc. v. HRL Assoc., Inc.*, 902 F.2d 1546 (Fed. Cir. 1990) | …………………… | 12 |
| *Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F. Supp. 267 | | |

(S.D.N.Y. 1992) …………………… 7

## STATUTES, RULES AND OTHER AUTHORITY

15 U.S.C. § 1115(b)(4) …………………… 11

15 U.S.C. § 1125(a) …………………… 4, 7

15 U.S.C. § 1127 …………………… 5

Fed. R. Civ. P. 12(b)(6) …………………… 4, 21

Fed. R. Civ. P. 41(a)(1)(A)(ii) …………………… 2

47 U.S.C. § 230 …………………… 1

Coleman, Jane, *Secondary Trademark Infringement*, http://www.secondarytrademark infringement.com/ …………………… 15, 17

## PRELIMINARY STATEMENT

Defendant Opinion Corp. is, as set forth in the Complaint, the corporate owner of an Internet website called PissedConsumer.com. That website is an indelicately but accurately named "gripe site" – a consumer forum that permits third parties to log on and post criticism or praise of businesses. Defendants Podolsky and Syrov are two of Opinion Corp.'s principals (collectively, all three defendants are referred to herein as "Opinion Corp.").

Plaintiff DeVere Brands, LLC ("DeVere") describes itself as an independent "financial company" providing services worldwide under the trade names DE VERE, DE VERE GROUP and DE VERE AND PARTNERS in which it claims trademark rights. It is suing the defendants for use of the alleged marks on the Pissedconsumer.com website in various way that allegedly amount to unfair competition.

But DeVere and PissedConsumer.com are not in competition. This is a defamation case in which neither defamation nor defamers are named, dressed up as a federal trademark claim in order to avoid the sting of guaranteed dismissal under Section 230 of the Communications Decency Act (47 U.S.C. § 230).

DeVere imagines that it is easier to have this Court silence criticism on PissedConsumer.com than to address its critics on their merits, either on PissedConsumer.com or elsewhere. But its complaint is premised on the negation of fundamental constitutional principles and controlling law regarding prior restraint of free speech, and has nothing at all to do with consumer confusion, the touchstone of a trademark infringement claim . This attempt to use the Lanham Act as a proxy for censorship should be rejected – especially where, as demonstrated below, the plaintiff does no business in the United States and does not even have a trademark that is protectable under U.S. law.

# STATEMENT OF FACTS

DeVere Group GmbH ("DeVere") is an entity organized under Swiss law. It offers its services to international investors, expatriates, investment houses and insurance companies and utilizes the trade names DEVERE, DEVERE GROUP and DEVERE AND PARTNERS (the "alleged trademarks"). (Complaint ¶¶ 1 – 3.1.) There is no allegation in the complaint that DeVere does business in the State of New York or, indeed, anywhere in the United States.

DeVere claims that it has developed distinctive trademarks and trade dress associated with its business operations; that its trade names are inherently distinctive and that they are used heavily in international marketing, including on websites. (Complaint ¶¶ 3.4 – 3.8.) DeVere does not claim to have a registered trademark for any of its "trade names" in any country, including the United States. The complaint originally featured claims not only sounding in trademark infringement, but various state-law based torts (Complaint ¶¶ 4.21 - 4.47). These claims were dismissed voluntarily pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) on October 10, 2011.

Defendants, as alleged in the complaint, own, operate and maintain the website PissedConsumer.com, which invites consumers, via extensive online and mobile marketing, to post public complaints from their personal computers and mobile phones. (Complaint ¶¶ 3.6-3.8.)[1] The complaint alleges as well that "Opinion Corp. has published press releases claiming that it is an unbiased "premier consumer advocacy group" that allows consumers to "make better choices" and provides consumers an "empowering" and "unbiased" view of companies and products. (Complaint ¶¶ 3.9-3.10). Moreover, according to the complaint Opinion Corp. "encourages" the posting of negative reviews at the PissedConsumer.com website, ensures that negative reviews are prominently displayed at PissedConsumer.com, and optimizes content of

---

[1] There are two of each ¶¶ 3.6 – 3.8 in the Complaint.

negative reviews to increase their visibility to search engines. (Complaint ¶¶ 3.11-3.13.) These allegations paint a picture of a conspicuously unpleasant, negative and nasty online environment for a trademark; a place where "pissed consumer" can expel their gall regarding the companies concerned. Yet the complaint alleges that by using the alleged trademarks, including in a sub-domain labeled http://devere-group.pissedconsumer.com/, "Opinion Corp.'s unauthorized and willful misuse of DeVere's marks is likely to cause confusion as to whether DeVere is sponsoring, has authorized or is somehow affiliated with the services and products advertised by Opinion Corp" and other, similar allegations of consumer confusion and deception.

The gravamen of the complaint is, of course, the "use" made by Opinion Corp. of DeVere's alleged trademark. This "use," ultimately, amounts to identifying – for consumers and Internet search engines alike – those web pages on which "pissed consumers" may upload or read complaints against the company, just as an index, title or label identifies the topic of a library stack, filing cabinet or book.

According to the complaint, Opinion Corp. "makes no attempt to determine whether reviews are legitimate … offers to remove, recategorize, hide and filter existing and new negative reviews at the PissedConsumer.com website if affected companies pay it … offers to act as a "gatekeeper" for affected companies to ensure that new negative reviews are not displayed at PissedConsumer.com if the affected company pays it an ongoing fee. …. refuses to require persons or entities posting reviews to reveal their identities unless affected companies pay a fee." (Complaint ¶¶ 3.14-3.17.) There is no allegation, however, that the reviews posted on PissedConsumer.com are false, misleading or confusing, leading to the inference that they are true, but that DeVere would like this Court to protect it even from justified criticism.

Finally, there is no allegation that any of the reviews posted on PissedConsuemr.com were written by any defendant in this action or that any website to which consumers are "diverted" by advertising on the PissedConsumer.com website is operated or controlled by defendants.

**LEGAL ARGUMENT**

## I.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT.

###     1.     Motion to dismiss standard

The standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well known to this Court:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. This rule does not require detailed factual allegations, but a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . .

> A trial court considering a Rule 12(b)(6) motion accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. To survive dismissal, a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level. In other words, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Applying the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Software for Moving, Inc. v. Frid*, 09 CIV 4341 DLC, 2010 WL 2143670 (S.D.N.Y. May 27, 2010) (internal quotations and citations omitted). As demonstrated below, plaintiff cannot meet the standard for pleading a plausible cause of action for trademark infringement or unfair competition here, and its complaint should be dismissed.

Following its earlier voluntary dismissal of the various state-law claims in its complaint, plaintiff's sole remaining cause of action is trademark infringement, unfair competition, false designation of origin and misappropriation under §43(a) of the Lanham Act (15 U.S.C. § 1125(a)) in connection with defendants' alleged use of the alleged marks. To prevail on a trademark claim based on an unregistered trademark, a plaintiff "must demonstrate that its unregistered ... trade name is distinctive and that numerous ordinary prudent purchasers are

4

likely to be misled or confused as to the source of the product in question." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir.2004). Because as a matter of law plaintiff can establish neither the existence of a valid mark nor a likelihood of confusion in this action, defendants are entitled to an order dismissing their complaint.

      **2.**      **Plaintiff has failed to allege the existence of a protectable trademark right**

The complaint alleges no use by DeVere of its alleged trademarks in the United States, or even of active promotion of them here. Plaintiff has thus failed to state a claim for trademark infringement because it has failed to allege the existence of a trademark that is cognizable under U.S. law.

That the Lanham Act cannot be invoked to protect plaintiff's alleged mark is a matter of settled law:

> [T]he TTAB's ruling in *Mother's Restaurants* and other cases properly reserves United States trademark protection to those foreign companies whose actual trade goes, attended by the use of its mark, into United States interstate or foreign commerce. . . . [T]he mere advertising or promotion of a mark in the United States is insufficient to constitute "use" of the mark "in commerce," within the meaning of the Lanham Act, where that advertising or promotion is unaccompanied by any actual rendering *in the United States or in "commerce which may lawfully be regulated by Congress,"* 15 U.S.C. § 1127, of the services "in connection with which the mark is employed."

*Buti v. Perosa, S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998) (emphasis in original; citation and internal quotations omitted); *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 138 (2d Cir. 1999). "Precisely because a trademark has a separate legal existence under each country's laws, ownership of a mark in one country does not automatically confer upon the owner the exclusive right to use that mark in another country. Rather, a mark owner must take the proper steps to ensure that its rights to that mark are recognized in any country in

which it seeks to assert them." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 165 (2d Cir. 2007) (rejecting application of "famous marks doctrine" for foreign marks under the Lanham Act).

Here the sole factual basis of plaintiff's claim to owning a trademark entitled to protection is the following allegations:

> 3.1  DeVere is a major independent financial company specializing on international financial consultations and services.
> 3.2  DeVere has more than 60,000 clients and provides its services in 40 countries with offices in Dubai, Geneva, Hong Kong, London, Mexico and Moscow.
> 3.3  DeVere offers its services to international investors, expatriates, investment houses and insurance companies.
> 3.4  DeVere utilizes the trade names: DeVere, DeVere Group and DeVere and Partners.
> 3.5  DeVere has developed distinctive trade, dress associated with its business operations.
> 3.6  DeVere's trade names are inherently distinctive.
> 3.7  DeVere has invested heavily in international marketing.
> 3.8  DeVere operates a number of websites including devere-group.com and levereandpartners.co.uk. These websites provide information about DeVere and investment opportunities to clients and potential clients. . . .
> 4.2  DeVere's trade name, marks, styles and domain names and variations thereof "marks") are valid and distinctive marks entitled to protection under the Lanham Act

The omission in ¶ 3.2, which alleges that DeVere "has more than 60,000 clients and provides its services in 40 countries with offices in Dubai, Geneva, Hong Kong, London, Mexico and Moscow," of any reference to the United States is telling.  By all indications, DeVere does not provide its services in this country.  Even if plaintiff's use of the word "international" and its allegation that it operates a website, presumably available to United States users, were construed as an allegation of marketing and promotion of DeVere's alleged marks in this country, this still falls far short of stating a claim under the Lanham Act.

The complaint contains simply no allegation that DeVere itself has used the alleged marks in interstate or U.S. commerce.  Nor is there even an allegation of the existence of foreign registrations, which under the rule of *ITC Ltd.* would still be insufficient to state a claim for

enforcement of a trademark claim as a matter of federal law absent any allegation of use in interstate commerce in this country. This failure of pleading alone provides adequate ground for this Court to dismiss the complaint.

### 3. Plaintiff has failed to plead facts that amount to a plausible claim of a likelihood of confusion

#### (a) Defendants' use of the alleged trademarks was obviously critical of DeVere and is not likely to cause a mistake as to origin, sponsorship or affiliation

Plaintiff's claim cannot succeed on the merits because even under the facts as pled plaintiff cannot, as a matter of law, show that the defendants' use of the alleged trademarks in connection with the web pages criticizing the products with which they are associated is likely to cause confusion, mistake, or deception. Not only is such use not infringing, it is expressive activity protected by the First Amendment, and plaintiff's claim that for trademark infringement should be dismissed.

A trademark owner's rights are violated only where the unauthorized use "has a substantial capacity to mislead consumers (or other concerned actors in the marketplace) into a confusion as to the entity furnishing the goods or services." *Yankee Pub. Inc. v. News America Pub. Inc.,* 809 F. Supp. 267, 272-73 (S.D.N.Y. 1992). Under §43(a) of the Lanham Act, which protects against trademark likelihood of confusion not only as to source, but also as to affiliation, connection, sponsorship, association, or approval, the use of the alleged trademarks of DeVere on PissedConsumer.com could not plausibly lead even the dimmest Internet user to believe that the commentary on the website – so offensive to plaintiff that it brought this lawsuit – was approved by DeVere. Nor could the offerings of companies supposedly competing with DeVere

possibly be construed as being "affiliated, connected, sponsored, associated, or approved" by plaintiff – otherwise they would not be competitors.[2]

As the Southern District noted in *Bihari v. Gross,* 199 F.Supp.2d 309 (S.D.N.Y. 2000), where, as here, it may be inferred that the goal of a "junior user's" alleged adoption of a trademark is to injure the "senior user," the likelihood of confusion is **minimal**, because the public is trusted to have common sense. "Because the purpose of the [defendants'] websites is to injure [plaintiff] commercially, no reasonable viewer would believe that the disparaging comments regarding [plaintiff's] business ethics – comments which appear on the first page of the websites – are endorsed by [plaintiff]." ) *Bihari*, 119 F.Supp.2d at 319. In fact, the courts routinely define "sophistication" in much less "sophisticated" terms than plaintiffs such as DeVere would suggest, for here a simple grasp of the obvious is all that is required to negate any confusion. For example, in *Girls Scouts v. Personality Posters Mfg. Co.*, 304 F. Supp. 1228, 1231 (S.D.N.Y. 1969), the court ruled that "rational analysis" precluded confusion about whether the Girl Scouts were the source of a poster depicting a pregnant girl in the well-known uniform of the Girl Scouts appearing with the caveat "BE PREPARED." Similarly, in *Stop the Olympic Prison v. United States Olympic Committee*, 489 F. Supp. 1112, 1123 (S.D.N.Y.1980), a poster reading "Stop the Olympic Prison" was held not to infringe the trademark of the United States Olympic Committee. The court reasoned as follows:

> On the basis of its own examination of the poster, the Court finds it extremely unlikely that anyone would presume it to have been produced, sponsored or in any way authorized by the U.S.O.C. While at a fleeting glance, someone might conceivably mistake it for a poster advertising the Olympics, nobody could

---

[2] It is impossible not to again mention at this juncture that the very premise of confusion as to "affiliation, connection, sponsorship, association, or approval" is itself preposterous when referring to an alleged trademark that is itself not used in commerce in the United States. Consumers cannot be "confused" by use of a trademark they have never seen used even by plaintiff. This issue is, however, addressed separately in the previous section.

conceivably retain such a misconception long enough to do any harm: for example, there is no danger that anyone would purchase or display it as such.

*Id.* Similarly, in *Taylor Bldg. Corp. of Am. v. Benfield*, 507 F. Supp. 2d 832 (S.D. Ohio 2007), the Court rejected a Lanham Act claim arising out of alleged trademark use on a gripe site such as PissedConsumer.com using this language:

> Perhaps most significant, the words "Taylor Homes" on Benfield's website are accompanied by the phrase "Badly Fingering Your Dreams" and "Ripoffs," plainly demonstrating that his is not a website sponsored by Taylor. Simply put, reasonable minds could come to but one conclusion on this issue: that there is no likelihood of confusion between Benfield's use of the word "Taylor" and Taylor's mark.

*Id.* at 845. As the Sixth Circuit explained in *Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003):

> [Plaintiff] Taubman concedes that Mishkoff is "free to shout 'Taubman Sucks!' from the rooftops...." Brief for Respondent, at 58. Essentially, this is what he has done in his domain name. The rooftops of our past have evolved into the internet domain names of our present. We find that the domain name is a type of public expression, no different in scope than a billboard or a pulpit, and Mishkoff has a First Amendment right to express his opinion about Taubman, and as long as his speech is not commercially misleading, the Lanham Act cannot be summoned to prevent it.

Here too no reasonable person could believe that anything about PissedConsumer.com is in any way affiliated with DeVere. In the end, the overall impression given by PissedConsumer.com web page, including its title and the name of the website itself, is so distinct both in style and content that no confusion is plausible. Indeed, the domain name http://devere-group.PissedConsumer.com itself negates the possibility of likelihood of confusion by virtue of its embedded statement of disapproval (by a "pissed consumer"), as set forth above.

For the foregoing reasons, defendants submit that there exists no likelihood of confusion caused by the use of plaintiff's mark in the instant case, including it applies to the subject domain names.

**(b) Defendants' use of DeVere's alleged trademarks is fair use**

Issues of fair use and a likelihood of confusion analysis are linked inextricably. A recent and factually similar case in this Circuit involving domain names is *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009) *aff'd*, 355 F. App'x. 508 (2d Cir. 2009). In *Cintas* a uniform supplier sued a number of labor unions and their employees, bringing claims under RICO, the Lanham Act, and state law. As here, the trademark claimed was used both in the title of the web page and the domain name: Defendants were accused of trademark infringement for their use of plaintiff's trademark, CINTAS, for a website called "Cintas Exposed" bearing the domain name www.cintasexposed.org. *Id.* at 575. Much as the plaintiff claims here, Cintas claimed that this website "competed unfairly . . . disparaging Cintas and its business practices, products and services, confusing Cintas's customers, diverting customers, sales and profits away from Cintas and portraying Cintas in a bad light to the general consuming public. . . . . According to the Amended Complaint, some of Cintas's customers decline to do any further business with Cintas after viewing the materials on www.cintasexposed.org." *Id.*

The Southern District dismissed the trademark claim. After setting out the famous "Polaroid factors" used in the Second Circuit since *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.1961) and finding that at least four of them favored defendants, the court wrote:

> Defendants are not using the "CINTAS" mark as a "source identifier", but rather solely to criticize Cintas's corporate practices. *See United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997) (noting there is no justification for relief under Section 1114 and 1125(a), when "the defendants ... us[e] plaintiff's mark not in a manner that would create confusion as to the source, but rather as part of a message whose meaning depend[s] on reference to plaintiff's product"). While the materials available on Defendants' websites may disparage Cintas, the likelihood that Cintas's actual or potential customers would be confused about who provides CINTAS goods and services is remote.

*Id.* at 579.

This analysis is on all fours with the case at bar. Fair use is established where, as here, a trademark is used as "a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. § 1115(b)(4). It "permits others to use a protected mark to describe aspects of their own goods." *Car-Freshner Corp. v. S.C. Johnson & Son, Inc*., 70 F.3d 267, 270 (2d Cir.1995). Here plaintiff's use of a trademark is, indeed, to use the language of *Bihari*, 119 F. Supp. 2d at 321, "not a bad-faith attempt to trick users into visiting his websites, but rather a means of cataloging those sites," and hence fair use. Moreover, a finding of fair use raises the bar for a finding of actionable likelihood of confusion. "Since the burden of proving likelihood of confusion rests with the plaintiff, and the fair use defendant has no free-standing need to show confusion unlikely, it follows . . . that some possibility of consumer confusion must be compatible with fair use, and so it is." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111,121-22 (2004). Plaintiff cannot meet that heightened standard under any plausible factual scenario.

### (c) The "initial interest confusion" doctrine is at best inapplicable here

The "initial interest confusion" doctrine is a dubious concept under which the Lanham Act supposedly "forbids a competitor from luring potential customers away from a producer by initially passing off its goods as those of the producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated." *Lamparello v. Falwell*, 420 F.3d 309, 315-16 (4th Cir. 2005) (internal quotations omitted). It replaces traditional tort concepts of harm, or even likelihood of harm, with a highly subjective, almost *per se* test for use on the Internet. The doctrine was famously rationalized in the Ninth Circuit's opinion in *Brookfield Communics., Inc. v. West Coast Entmt. Corp.,* 174 F.3d 1036, 1064 (9th Cir. 1999) utilizing the analogy of a misleading highway sign that imposes harm by causing consumers to "get off at the

wrong exit." *Id.*     But the doctrine of "initial interest" has been the subject of considerable criticism in general.  Both the First and Fourth Circuits have expressed considerable skepticism about whether the doctrine of initial interest confusion is valid at all. *See Lamparello*,  420 F.3d at 317; *Hasbro, Inc. v. Clue Computing*, 232 F.3d 1, 2 (1st Cir. 2000). Developed in a traditioanil sales context, it was meant to be applied only where "a potential purchaser is initially confused [such that] the [senior seller] may be **precluded from further consideration.**"   *Weiss Assoc., Inc. v. HRL Assoc., Inc.*, 902 F.2d 1546 (Fed. Cir. 1990) (emphasis added).  In other words, it only matters once the user is "off the highway."  For this reason, the application of this analogy to the virtual as opposed to a real world was questioned in *Bihari*, where the court wrote:

> The harm caused by a misleading billboard on the highway is difficult to correct. In contrast, on the information superhighway, resuming one's search for the correct website is relatively simple. With one click of the mouse and few seconds delay, a viewer can return to the search engine's results and resume searching for the original website.

*Bihari*, 199 F.Supp.2d at 320, n. 15.  This is consistent with longstanding principles of trademark law.  In *Girl Scouts*, for example, the Southern District of New York rejected transient confusion as proof of trademark harm in a social-commentary context:

> Even if we hypothesize that some viewers might at first believe that the subject of the poster is actually a pregnant Girl Scout, it is highly doubtful that any such impression would be more than momentary or that any viewer would conclude that the Girl Scouts had printed or distributed the poster.

304 F. Supp. at 1231. As the Southern District recognized in *Girl Scouts*, ephemeral moments of confusion that do not threaten to divert sales are not evidence of actionable harm under the Lanham Act.  Real harm must be shown to recover for any tortious conduct, but all the more so when such harm is posited as a basis for overcoming the constitutional protection of free speech:

> No evidence is found anywhere in the record before the court that the poster has to date damaged the plaintiff in any way. No facts are presented to show that contributions to the organization have fallen off, that members have resigned, that

recruits have failed to join, that sales . . . have decreased, or that voluntary
workers have dissociated themselves or declined to support the honorable work of
the organization.

*Id.* at 1235. Similarly, there is no actual allegation of anything happening to DeVere that could
be objectively described as harm attributable to these defendants, merely a conclusory claim that
plaintiff has been "damaged."

Whatever force initial interest confusion has is far less where, as here, customers, in this
case of apparently sophisticated financial services, are likely to exercise care in making their
final purchasing decisions. *See*, *Nissan Motor v. Nissan Computer*, 378 F.3d 1002, 1019 (9th Cir,
2004); *see also*, *Hearts on Fire Co. v. Blue Nile*, 603 F. Supp. 2d 274, 287 (D. Mass. 2009)
("initial interest confusion can support a claim under the Lanham Act – but only where the
plaintiff has plausibly alleged that consumers were confused, and not simply diverted.").
Because, as *Bihari* taught, trademarks embedded in criticism are unlikely to be confused as
competitive, there can be no application of initial interest here and no basis for a finding of
likelihood of success on the merits. "Applying the initial interest confusion theory to gripe sites .
. . would enable the markholder to insulate himself from criticism—or at least to minimize
access to it. We have already condemned such uses of the Lanham Act, stating that a markholder
cannot shield itself from criticism by forbidding the use of its name in commentaries critical of
its conduct." *Lamparello*, *supra*, 420 F.3d at 317-18 (internal quotes and citation omitted.)

Moreover, DeVere's desire to utilize the Lanham Act, via "initial interest," as a tool of
censorship is incompatible with the First Amendment. As the *Lamparello* court wrote:

Applying the initial interest confusion theory to gripe sites like [defendants']
would enable the markholder to insulate himself from criticism — or at least to
minimize access to it. We have already condemned such uses of the Lanham Act,
stating that a markholder cannot shield itself from criticism by forbidding the use
of its name in commentaries critical of its conduct. Just because speech is critical

of a corporation and its business practices is not a sufficient reason to enjoin the
speech.

*Lamparello*, 420 F.3d at 317-18 (internal quotations and cites omitted).  Courts in this Circuit
have agreed.  Thus in CINTAS, the Southern District held as follows:

> [B]ecause consumers diverted on the Internet can more readily get back on track
> than those in actual space, thus minimizing the harm to the owner of the searched-
> for site from consumers becoming trapped in a competing site, Internet initial
> interest confusion requires a showing of intentional deception. Here, the
> allegations do not create any plausible inference of intentional deception. First, no
> consumer looking for a uniform company's website would mistakenly visit
> "cintasexposed.org" or any of the affiliated websites. Second, the website, all of
> its content, and its prominent disclaimer show that the Defendants were
> transparent in their disdain for Cintas. The likelihood of confusion among
> consumers visiting their websites is implausible.

*Cintas Corp.*, 601 F. Supp. 2d at 579-80 (internal quotations omitted), *quoting*, *Savin Corp. v.
The Savin Group*, 391 F.3d 439, 462 n. 13 (2d Cir. 2004).  Because there can be neither "initial
interest confusion" nor any subsequent confusion between plaintiff's alleged marks and
defendants' services which are limited to publishing reviews, plaintiff has failed to state a claim
for trademark infringement on this ground as well.

      **4.**     **Plaintiff has failed adequately to plead a claim for secondary
             trademark liability**

Plaintiff basis its claims both on the subdomains utilized by defendants and content,
including advertisements and consumer reviews, found on the PissedConsumer.com website in
juxtaposition with the alleged trademarks. Thus their trademark claims are based, though without
adequate pleading, on the imposition of secondary liability for trademark infringement by third
parties not named in this action.   DeVere does not, however, suggest (nor is there any basis for
doing so) that the consumer reviews on defendants' site or the allegedly competing third-party
websites  to which consumers are "diverted" are controlled by defendants.  As demonstrated

below, even assuming that DeVere had a cognizable trademark eligible for protection here, its claim for secondary trademark infringement liability would fail as a matter of law.

Claims for direct and contributory trademark infringement are legally and factual distinct. *See Steinway, Inc. v. Ashley*, 01 CIV 9703 GEL, 2002 WL 122929 (S.D.N.Y. Jan. 29, 2002) *citing Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 853-54 (1982); *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 64 (2d Cir. 1992). Contributory trademark infringement requires the satisfaction of separate elements in determining liability, namely, that "a defendant either **intentionally induces** a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe that mark." *Id.* (emphasis added). To find contributory infringement on an Internet website, a plaintiff must prove both that the defendant directly controlled and monitored the activities of the infringing website, and that the defendant had actual or constructive knowledge of the infringement. *Fare Deals, Ltd. v. World Choice Travel.com, Inc*., 180 F.Supp.2d 678 (D. Md. 2001). *See*, Coleman, Jane, *Secondary Trademark Infringement*, http://www.secondarytrademark infringement.com/?p=91 (last visited October 10, 2011).

In fact, there can be no secondary liability for trademark infringement without at least an allegation of direct trademark infringement by someone. *See*, *Sony Computer Entertainment America, Inc. v. GameMasters*, 87 F.Supp.2d 976, 986 (N.D. Cal. 1999) (motion for a preliminary injunction based on contributory infringed denied where plaintiff brought "scant evidence and allegations" of direct trademark infringement); *Lockheed Martin Corp. v. Network Solutions, Inc*. 985 F.Supp.949, 964-965 (C.D. Cal. 1997) ("Contributory infringement doctrine has always treated uncertainty of infringement as relevant to the question of an alleged contributory infringer's knowledge[]"), *aff'd* , 194 F.3d 980 (9th Cir. 1999). Given that DeVere

has alleged no set of facts in its complaint sounding in contributory trademark infringement, including any allegation of trademark infringement by the parties posting reviews or operating the third-party websites to which consumers are allegedly "diverted" via the PissedConsumer.com website, this alone merits dismissal of its claims sounding in "diversion" or based on consumer reviews "associated" with the alleged trademarks.

Moreover, the law is that website owners are not liable for merely providing a platform for alleged trademark infringements arising from links to third-party websites. Rather, in a claim for contributory negligence, the focus is always on whether the defendant has direct control and monitoring of the instrumentality used by the third party that is allegedly infringing the plaintiff's mark:

> [M]ere association with an allegedly infringing website, without more, has been found to be insufficient to impose contributory liability on a non-infringing third party. There must be evidence that the [defendant] controlled and monitored the contents of the website to justify an extension of the contributory liability doctrine beyond the manufacturer-distributor context set forth in Inwood. *See SB Designs v. Reebok Int'l., Ltd.*, 338 F.Supp.2d 904 at 913 (N.D. Ill. 2004), citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999), for the suggestion that contributory liability theory could be applied to the Internet if there were evidence of monitoring and control. . . .

> [In *Reebok*] . . . at issue was whether the court should extend the *Inwood Laboratories* standard beyond the manufacturer-distributor context as the Seventh Circuit had done in *Hard Rock Café*, 955 F.2d 1143 (7th Cir. 1992).

> The court refused to do so, noting that the Seventh Circuit's expansion of the "product" requirement for contributory infringement was much more limited than the plaintiffs would have it. Specifically, the court rejected the plaintiff's argument that "a non-infringing supplier is contributorily liable if the product it supplies is associated in some way with an infringing product that the supplier did not supply." *Id*. It also rejected their assertion that "the sponsors of an event who supply products for the event, without more, are contributorily liable for infringement committed by the event's promoters or organizers." *Id*.

> Furthermore, the court noted that the Seventh Circuit's expansion of contributory liability "was premised on a defendant's direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Id*., citing

> *Hard Rock Café*, 955 F.2d at 1149 and *Lockheed Martin Corp. v. Network Solutions, Inc*., 194 F.3d 980, 984 (9th Cir. 1999).  Reebok, however, maintained that it exercised no control over Crossover Promotions' conduct or materials, which the plaintiffs could not disprove. The court therefore granted summary judgment. *SB Designs*, *supra* at 913.

Coleman, Jane, *supra*; *see*, *Tiffany Inc. v. eBay Inc*., 600 F.3d 93, 104 (2d Cir. 2010).   Here plaintiff has not alleged that the content of the ads or reviews on the Pissed Consumer website are controlled or even materially affected by any action by defendants.  It only suggests, by inference, that some reviews which perhaps do not appear may have been affected by them.  (Complaint ¶¶ 3.11-3.15.)  Even if they had, this would not amount to trademark infringement in connection with the reviews that do use the mark.  The law still does not impose contributory liability on a defendant for actions by third parties even when a defendant has had some effect on the process that results in infringement, including merely publishing them – notwithstanding plaintiff's ponderous allegations regarding "improper" and "black hat" (but not unlawful) techniques for search engine optimization.  (Complaint ¶¶ 3.25-3.26.)  "[T]he mere existence of a tool that assists advertisers in optimizing their advertisements does not, in itself, indicate intent to induce infringement."  *Rosetta Stone Ltd. v. Google, Inc.*, 730 F.Supp.2d 531, 547-48 (E.D. Va. 2010).

Plaintiff here does not, nor could it, claim trademark infringement by the third party authors of critical reviews, nor by the third-party websites to which consumers are allegedly "diverted" by the advertisements on the PissedConsumer.com website.  Absent even a *prima facie* trademark infringement claim against such third parties, no claim for contributory liability against defendants can lie here.  Neither can DeVere proceed on a theory of vicarious infringement absent allegations of an agency relationship or a similar level of control by defendants.  "Absent an agency relationship, vicarious liability can only be imposed if the

defendant and infringer 'exercise joint ownership or control over the infringing product.'" *Id.* at 549 (E.D. Va. 2010), citing *Perfect 10, Inc. v. Visa Int'l Serv. Assoc.*, 494 F.3d 788, 807 (9th Cir.2007). No such claim is found in the complaint, and for this reason, too, the complaint fails as a matter of law to state a claim for which relief can be granted.

**II. PLAINTIFF CANNOT MEET THE HIGH STANDARDS NECESSARY TO JUSTIFY THE GRANTING OF AN INJUNCTION TO RESTRAIN FREE SPEECH ON DEFENDANTS' WEBSITE.**

Plaintiff seeks preliminary and permanent injunctive relief under the Lanham Act "enjoining defendants from using DeVere's marks in connection with the PissedConsumer.com website or devere-group.pissed.consumer.com websites." (Complaint ¶ V.A.) In other words, plaintiff asks this Court to restraint the rights of third parties who post their complaints about DeVere on PissedConsumer.com based on a specious trademark infringement theory. The law is clear that no such relief should issue from this or any Court that answers to the United States Constitution.

It is well established that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997), and that a preliminary injunction "is one of the most drastic tools in the arsenal of judicial remedies and should not be routinely granted." *Malletier v. Dooney & Bourke, Inc.,* 340 F. Supp.2d 415, 428 (S.D.N.Y. 2004) (internal quotes omitted). Though it is demanded in the complaint, no application for a preliminary injunction is pending. Yet **all** injunctions implicating protected speech, such as the requested order muting criticisms of DeVere's services on PissedConsumer.com by "merely" forbidding defendants from using the alleged marks, are frowned upon by the law. Nearly forty years ago, in *Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971), the Supreme Court

struck down as unconstitutional a state court's order enjoining the distribution of leaflets critical of respondent's business practices. The Court emphasized:

> It is elementary, of course, that in a case of this kind the courts do not concern themselves with the truth or validity of the publication. Under *Near v. Minnesota*, the injunction, so far as it imposes prior restraint on speech and publication, constitutes an impermissible restraint on First Amendment rights. . . . No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court.

*Id.* at 418-19 (internal citations omitted). It may at this point be described as an ironclad rule that prior restraints on speech are presumptively invalid, even when the potential harm at issue was much greater than any injury to reputation. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) (rejecting prior restraint issued to ensure protection of criminal defendants' Sixth Amendment right to a fair trial); *New York Times Co. v. United States*, 403 U.S. 713 (1971) (even during wartime, newspapers not enjoined from publishing papers that government feared could threaten national security); *Stop the Olympic Prison v. United States Olympic Comm.,* 489 F. Supp. 1112, 1124-25 (S.D.N.Y.1980) ("A court of equity will not, except in special circumstances, issue an injunctive order restraining libel or slander or otherwise restricting free speech. To enjoin any publication, no matter how libelous, would be repugnant to the First Amendment to the Constitution, and to historic principles of equity").

Ultimately, notwithstanding plaintiff's elaborate pleading, it is essentially seeking the same kind of prior restraint refused by courts in the foregoing cases, and too many others like them to count. There is at least one big difference, however. While the restraint sought by the government, for example, in the Pentagon Papers case required the Court to weigh life-and-death national security claims against free speech concerns, here plaintiff is asking the Court to get one website to stop publishing complaints concerning a financial services company. This is a consideration that dwarfs those that were found insufficient, though weighty, in the earlier cases.

This Court could end its inquiry on that basis alone and dismiss the complaint on constitutional grounds.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court dismiss complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

GOETZ FITZPATRICK LLP

By:_____

Ronald D. Coleman (RC 3875)

Joel G. Macmull (JM 8239)
One Penn Plaza—Suite 4401
New York, NY 10119
(212) 695-8100
rcoleman@goetzfitz.com
jmacmull@goetzfitz.com
*Attorneys for Defendants*
*Opinion Corp., Michael Podolsky & Alex Syrov*

Dated: October 10, 2011