UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
DEVERE GROUP GMBH,

                Plaintiff,   **MEMORANDUM AND ORDER**
    -against-   Case No. 11-cv-3360 (FB)(LB)

OPINION CORP. d/b/a
PISSEDCONSUMER.COM, MICHAEL
PODOLSKY, JOANNA SIMPSON and ALEX
SYROV,

                Defendants.
----------------------------------------------------------------x

*Appearances*:
*For the Plaintiff*:
CHRISTOPHER R. LOPALO, ESQ.
Napoli Bern Ripka & Associates LLP
350 Fifth Avenue, Suite 7413
Great River, New York 11739
MICHAEL D. MYERS, ESQ.
Myers & Company, P.L.L.C.
1530 Eastlake Avenue East
Seattle, Washington 98102

*For the Defendants*:
RONALD D. COLEMAN, ESQ.
JOEL G. MACMULL, ESQ.
Goetz Fitzpatrick LLP
One Penn Plaza, Suite 4401
New York, New York 10119

**BLOCK, Senior District Judge:**

        Plaintiff deVere Group GmbH ("deVere") brings this action for violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, against defendants Opinion Corp., Michael Podolsky, Joanna Simpson, and Alex Syrov (collectively, "defendants").[1]  Defendants move to dismiss for failure to state a claim, pursuant to Federal Rule of Evidence 12(b)(6).  For the following reasons, defendants' motion is granted.

**I**

        For purposes of this motion the court must take as true all of the allegations of deVere's complaint, and must draw all inferences in deVere's favor.  *See Weixel v. Board of*

---

[1] DeVere also originally brought state law tort claims.  Those claims were voluntarily dismissed on October 10, 2011.

*Educ.*, 287 F. 3d 138, 145 (2d Cir. 2002). The district court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken, or. . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). The following facts are presented accordingly.

DeVere is an international financial consulting company, organized under Swiss law, which works with individual investors, investment houses, and insurance companies in approximately 40 countries, including, according to a company website, the United States. DeVere operates a number of websites, including devere-group.com and devereandpartners.co.uk, which provide information for clients and potential clients about deVere financial services and investment opportunities. DeVere contends that it utilizes the following distinctive "trade names": deVere, deVere Group and deVere and Partners.[2] Compl. ¶ 3.4.

Opinion Corp. owns, operates, and maintains the website PissedConsumer.com, a complaint site which invites consumers to post reviews and criticism of businesses. Negative reviews are prominently displayed on the website. Opinion Corp. advertises PissedConsumer as a "premier consumer advocacy group," and as a review website which allows consumers to "make better choices" and provides an "empowering" and "unbiased"

---

[2] A "trade name" under the Lanham Act is "any name used by a person to identify his or her business or vocation." 15 U.S.C. § 1127. Trade name infringement is protected under the Lanham Act based upon the same criteria applied for "trademarks." *See Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 579 (2d Cir. 1991). Because much of the relevant case law refers to trademarks, the Court will use the terms "mark" and "name" interchangeably.

view of companies and products. Compl. ¶¶ 3.9, 3.10. The individual defendants are all officers of Opinion Corp.: Podolsky is the Chief Executive Officer, Simpson is the Marketing Director, and Syrov is the President.

Opinion Corp. creates "subdomains" for each of the companies reviewed on PissedConsumer. Complaints about deVere are posted on the subdomain devere-group.pissedconsumer.com (the "deVere subdomain"). The deVere subdomain page contains a brief description of the company, followed by a section labeled "Devere Group Complaints and Reviews." Review headings include "Devere stole my pension" and "Devere Lies-Conmen-Fraudsters." The Google search engine displays the deVere subdomain among the top results when a search is performed for "deVere" or "deVere Group." DeVere attributes this high ranking to Opinion Corp's search engine optimization ("SEO") practices, through which Opinion Corp. makes the contents of PissedConsumer.com appear particularly relevant to the algorithms of search engines like Google.

## II

DeVere asserts a claim for "trademark infringement, unfair competition. . . [and] false designation of origin" under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Compl. ¶4.8.[3]

---

[3] The Complaint also refers to claims for "false advertising" and "cyberpiracy" in violation of 15 U.S.C. § 1125. Although defendants move to dismiss deVere's complaint in its entirety, neither party has discussed the elements of these two claims. Because deVere has not addressed false advertising or cyberpiracy, those claims are deemed abandoned. *See Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.").

**A. Standards Governing the Lanham Act**

Section 43(a) of the Lanham Act is designed to "eliminate the confusion that is created in the marketplace by the sale of products [or services] bearing highly similar marks." *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 (2d Cir. 2005). To establish liability under Section 43(a) of the Lanham Act, "a plaintiff must show (1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the defendant's mark infringes, or is likely to infringe, the mark of the plaintiff," meaning that use of the mark "creates a likelihood of confusion." *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09 (2d Cir. 1997).

For the first element, a mark is "valid" and entitled to protection when it is "distinctive" and links a product to its particular source. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 758 (1992). In addition, trademark protection is reserved to foreign companies "whose actual trade goes, attended by the use of its mark," into commerce "in the United States or in commerce which may lawfully be regulated by Congress." *Buti v. Perosa, S.R.L.*, 139 F.3d 98, 105 (2d Cir. 1998) (internal quotation marks omitted); *see ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007) ("The territoriality principle requires the use to be in the United States for the owner to assert priority rights to the mark under the Lanham Act.").

For the second element, "[l]ikelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification. . . The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 383-84 (2d Cir. 2005) (internal citations and quotation marks omitted). "The crucial

4

issue in an action for trademark infringement . . . is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 1009) (quoting *Saving Corp. v. Saving Grp.*, 391 F.3d 439, 456 (2d Cir. 2004)).

Courts generally consider the factors established in *Polaroid Corp. v. Polarad Elec. Corp.*, 298 F.2d 492, 495 (2d Cir. 1961): (1) the strength of the plaintiff's mark; (2) the degree of similarity between the marks; (3) the competitive proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) evidence of actual consumer confusion; (6) whether the defendant acted with bad faith; (7) the quality of defendant's product; and (8) consumer sophistication. The *Polaroid* test "is not a mechanical process where the party with the greatest number of factors weighing in its factor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000).

**B. Analysis**

DeVere contends that Opinion Corp. improperly used deVere's trade names in text on PissedConsumer.com and in the deVere subdomain, in a manner "likely to cause confusion as to whether deVere is sponsoring, has authorized or is somehow affiliated with the services and products advertised by Opinion Corp. at PissedConsumer.com." Compl. ¶4.6. Defendants counter that (1) deVere fails to allege the existence of a protected trademark and (2) defendants' use of deVere's trade names is not likely to cause consumer confusion.

5

**1. Valid mark entitled to protection**

Defendants do not dispute that the deVere trade names at issue are "distinctive" in the manner required for protection under the Lanham Act. Instead, they claim that deVere has not alleged "the existence of a trademark that is cognizable under U.S. law" because the Complaint does not contain any specific references to deVere's U.S. business. Def's Mem. of Law at 5. DeVere counters that it offers products and services to investors through its Miami office and that information about this office found on the deVere website, which is referenced in the Complaint, "constitutes an allegation that deVere has used the marks in U.S. interstate or foreign commerce." Pl's Mem. of Law at 6.

As has already been stated, the court may, for the purposes of this motion to dismiss, consider the contents of the deVere websites, upon which deVere relied in bringing this lawsuit and which are "integral" to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The deVere website contains a clear public statement that the company conducts commerce through its Miami office. Thus, "construing the complaint liberally" and "accepting all reasonable inferences in the plaintiff's favor," *id.* at 152, deVere has presented a "plausible" allegation that it possesses valid trade names that are protected under Section 43(a) of the Lanham Act. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**2. Likelihood of confusion**

Next, defendants argue that "the use of the alleged trademarks of deVere on PissedConsumer.com could not plausibly lead even the dimmest Internet user to believe that the commentary on the website – so offensive to plaintiff that it brought this lawsuit – was approved by deVere." Def's Mem. of Law at 7. In response, deVere contends that the

likelihood of confusion element is satisfied by the "initial interest confusion" doctrine. Pl's Mem. of Law at 8.

Several of the *Polaroid* factors weigh against deVere's Lanham Act claim. First, deVere's services do not compete with those of Opinion Corp. *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 480 (2d Cir. 1996) ("The 'proximity-of-the-products' inquiry concerns whether and to what extent the two products compete with each other."). Nor has deVere provided any allegations of actual consumer confusion. *See id.* ("While evidence of actual confusion is not necessary to the plaintiff's claim, 'its lack may under some circumstances be used against the plaintiff.'") (quoting *Hasbro, Inc. v. Lanard Toys, Ltd.* 858 F.2d 70, 78 (2d Cir. 1988)). In addition, there is no issue of deVere wishing to "bridge the gap" between its products and Opinion Corp.'s product. This factor refers to the plaintiff's "interest in preserving expansion and entering into related fields." *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 504 (2d Cir. 1996). DeVere "has shown no intention of entering into the field" of consumer complaint websites, "and there is no evidence that consumers would relate [deVere] to such an enterprise." *Id.* Finally, deVere has not alleged bad faith on the part of Opinion Corp. because, in the trademark context, "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus.*, 412 F.3d at 388.[4]

---

[4] The Court does not address the other *Polaroid* factors – the strength of plaintiff's mark, the degree of similarity between the marks, the quality of defendants' product, and the sophistication of the relevant group – because they do not weigh heavily in favor of or against deVere's case. It is not required for a district court to "slavishly recite the litany of all eight *Polaroid* factors in each and every case." *Orient Express Trading Co. v.*

Courts have consistently held that so-called "gripe sites" incorporating derogatory or critical terms alongside a company's trade name, in both the domain name and the website contents, do not present a likelihood of confusion for the purposes of Section 43(a). *See e.g. Taubman Co. v. Webfeats*, 319 F.3d 770, 777-78 (6th Cir. 2003) (domain name taubmansucks.com for website containing material critical of plaintiff did not create possibility of confusion); *Taylor Building Corp. of Am. v. Benfield*, 507 F. Supp. 2d 832, 847 (S.D. Ohio 2007) (domain name taylorhomesripoff.com did not create possibility of confusion because no one "seeking Taylor's website would think – even momentarily – that Taylor in fact sponsored a website that included the word 'ripoff' in its website address"); *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161, 1163-64 (C.D. Cal. 1998) (domain name compupix.com/ballysucks containing complaints about plaintiff did not create possibility of confusion.).

In particular, defendants rely upon *Cintas Corp. v. Unite Here*, 601 F. Supp. 2d 571 (S.D.N.Y. 2009), *aff'd* 355 Fed Appx. 508 (2d Cir. 2009), in which the district court dismissed Lanham Act claims against the operator of a gripe website, www.cintasexposed.com. With respect to likelihood of confusion, the court found that "[w]hile the materials available on Defendants' websites may disparage Cintas, the likelihood that Cintas's actual or potential customers would be confused about who provides CINTAS goods and services is remote." *Id.* at 579. In addition, there "is no justification for relief under Section . . . 1125(a) 'when the defendants. . . us[e] plaintiff's mark not in a manner that would create confusion as to the source, but rather as part of a message whose meaning depend[s] on reference to plaintiff's

---

*Federated Dep't Stores, Inc.*, 842 F.2d 650, 654 (2d Cir. 1988).

8

product.'" *Id.* (quoting *United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 92-93(2d Cir. 1997)).

That logic is applicable here – there is no likelihood that a consumer visiting PissedConsumer.com would mistakenly believe that deVere sponsored or approved the contents of that website. The term "pissed" in the website name is clearly negative, as is the commentary on the website about deVere's services – terms like "stole," "WARNING," "fraudsters," and "scams" figure prominently. As this court recently found in a very similar Lanham Act case against Opinion Corp. as operator of PissedConsumer.com, it "strains credulity that an Internet user would believe that plaintiffs would sponsor or otherwise approve of a site that contains such criticisms." *Ascentive, LLC v. Opinion Corp.*, 2011 WL 6181452, at *9 (E.D.N.Y. 2011).

In addition, deVere's reliance upon the "initial interest confusion" doctrine is unpersuasive. Initial interest confusion "arises when a consumer who searches for the plaintiff's website with the aid of a search engine is directed instead to the defendant's site because of a similarity in the parties' website addresses." *Savin Corp. v. Savin Grp.*, 391 F.3d 438, 463 n.13 (2d Cir. 2004). Harm occurs when a "potential customer believes that the competing website is associated with the website the customer was originally searching for and will not resume searching for the original website." *Bihari v. Gross*, 119 F. Supp. 2d 309, 319 (S.D.N.Y. 2000). "Because consumers diverted on the Internet can more readily get back on track than those in actual space, thus minimizing the harm to the owner of the searched-for site from consumers becoming trapped in a competing site, Internet initial interest confusion requires a showing of intentional deception." *Savin*, 391 F.3d at 462 n.13.

9

The doctrine is not applicable here. PissedConsumer.com does not divert Internet users away from deVere's website because deVere does not have a website that competes for business with PissedConsumer.com; Opinion Corp. provides a forum for customer criticism of businesses, while deVere provides financial services. *See Bihari*, 119 F. Supp. 2d at 320 (for purposes of the initial interest confusion doctrine, a "gripe site" was not in competition with the business that its contents criticized); *see Lamparello v. Falwell*, 420 F.3d 309, 317 (4th Cir. 2004) (the "critical element" of initial interest confusion – "use of another firm's mark to capture the markholder's customers and profits – simply does not exist when the alleged infringer establishes a gripe site that criticizes the markholder."). Initial interest confusion does not arise "in circumstances where the products in question are used for substantially different purposes and therefore the merchants are not in close competitive proximity." *Big Star Entertainment, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 209-10 (S.D.N.Y. 2000). Accordingly, deVere's allegations "do not create any plausible inference of intentional deception"; there is no risk that a customer seeking deVere financial services would mistakenly visit and divert their business to PissedConsumer.com. *Cintas*, 601 F. Supp. 2d at 579.

### III

Defendants' motion to dismiss is granted because deVere has failed to state a claim that defendants' use of deVere trade names violates section 43(a) of the Lanham Act.

**SO ORDERED.**       s/ Judge Frederic Block
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
July 13, 2012

10